(June 5, 1912.)

## SHOSHONE HIGHWAY DISTRICT OF LINCOLN COUNTY, STATE OF IDAHO, Respondent, v. HARRY .W. ANDERSON, Appellant.

[125 Pac. 219.]

CONSTITUTIONAL LAW—TITLE OF ACT—TAXATION—DOUBLE TAXATION— MUNICIPAL CORPORATIONS—DISSOLUTION—POWER OF LEGISLATURE— DELEGATION OF AUTHORITY TO TAX—HIGHWAY DISTRICTS—REGIS- TRATION FOR ELECTIONS—BOARD OF COMMISSIONERS—DE FACTO OF- FICER.

(Syllabus by the court.)

1.  The title of the act of March 8, 1911, Sess. Laws 1911, p. 121, embraces but one subject, to wit, organization and government of highway districts, and matters germane, connected with, and relating to, the general subject of organization and government of highway districts, and in no way contravenes the provisions of sec. 16, art. 3 of the constitution.

2.  The title of the act of March 8, 1911, Sess. Laws 1911, p. 121, wherein it is provided for the organization and government of high- way districts and for the apportionment among municipalities, does not designate two different subjects, as the apportionment among municipalities of the fund collected from taxation made by the or- ganized highway district, is directly germane and connected with the subject of government of highway districts.

3.  A highway district, as intended by the act of March 8, 1911, is not a political municipality, such as a city, town or village, but is a municipality created for a special purpose, and is made a taxing district of territory to be organized under the provisions of said act, and is created for the purpose of assessing the property within a

district for the sole purpose of improving the highways within the district.

4. The subject of taxation is a matter within the province of the legislature of the state, unless there is some specific limitation found in the constitution, and the delegation of power to a highway district created under the provisions of the act, to assess taxes within the district, is not prohibited by the constitution, even though a city, town or village is included within such territory.

5. A municipal corporation organized under authority of the legislature can be dissolved as directed by the legislature, and this may be effected by the provisions of the law creating the corporation, or by the general laws of the state, or by a subsequent legislative act.

6. There is no constitutional requirement that registration must be had for elections in special municipal corporations created by the legislature, such as irrigation districts, drainage districts and good road districts, and no provision being made for registration in the act providing for the organization and government of such special municipal corporation, or by general law, none is required.

7. Where a person is appointed as a member of the board of highway commissioners under the provisions of the act of March 8, 1911, and such person is ineligible to hold such office, and such person accepts such office and acts in that capacity, until such eligibility of such officer is called in question, he acts as a *de facto* officer, and the action of the board is not illegal or void by reason of the fact that such *de facto* officer acts as a member of such board.

8. Where, under the provisions of the act of March 8, 1911, a highway district is created, and the governor of the state appoints such commissioners as provided in said act, and three members unanimously act upon the calling of an election and the issuing of bonds of said district, the fact that a majority of the board, constituted of members who are qualified as such, and controlling the power of the board, approves and indorses the entire proceedings, makes such action of the board legal as the action of the board.

APPEAL from the District Court of the Fourth Judicial District for Lincoln County. Hon. Edward A. Walters, Judge.

An application for a writ of mandate. *Affirmed.*

Heist & Aubolee, for Appellant.

"Two different bodies cannot exercise the same power in the same jurisdiction at the same time, and this right must

be held exclusive." (*People v. Parks,* 58 Cal. 624; *Martin v. Aston,* 60 Cal. 63.)

Can anyone believe, by reading the title of the act, that it would provide for reorganization, or the manner in which the court should construe the act, or for a penal offense, or that it would define the legal entity of an organization organized thereunder? (*Northwestern Mfg. Co. v. Chambers,* 58 Mich. 381, 55 Am. Rep. 693, 25 N. W. 373; *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962; *State v. Nomland,* 3 N. D. 427, 44 Am. St. 572, 57 N. W. 85; *Callaghan v. Chipman,* 59 Mich. 610, 26 N. W. 808; *People v. Commrs. of Highways,* 53 Barb. 73; *Astor v. New York Arcade Rys. Co.,* 113 N. Y. 93, 20 N. E. 594, 2 L. R. A. 789; *Diana Shooting Club v. Lamoreux,* 114 Wis. 44, 91 Am. St. 898, 89 N. W. 880; *Spratley v. Commrs.,* 56 Kan. 272, 43 Pac. 232; *Colquitt v. Simpson,* 72 Ga. 501.)

The legislature has no constitutional power to delegate its authority, except to municipal corporations as provided in sec. 6, art. 7, and to county commissioners, as provided in sec. 15 of said article of the constitution. (*Vallelly v. Board of Park Commrs.,* 16 N. D. 25, 111 N. W. 615, 15 L. R. A., N. S., 61; Cooley, Taxation, 3d ed., p. 99; *State ex rel. Howe v. Des Moines,* 103 Iowa, 76, 64 Am. St. 157, 72 N. W. 639, 39 L. R. A. 285; *Harward v. St. Clair etc. Co.,* 51 Ill. 130; *Parks v. Wyandotte,* 61 Fed. 437; *People ex rel. Commrs. v. Detroit,* 28 Mich. 228, 15 Am. Rep. 202; Cooley's Const. Lim., p. 163; Dillon, Mun. Corp., sec. 746, and cases cited; Gray, Lim. of Taxing Power, sec. 552; *Hinze. v. People,* 92 Ill. 406; *People v. Parks, supra; Bernard's Twp. v. Allen,* 61 N. J. L. 228, 39 Atl. 716.)

Johnson & Haddock, for Respondent.

"The courts must give a liberal construction to the language used by the legislature in framing the title to any given act which it may pass." (*Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962.)

"The generality of a title to a bill is no objection to it so long as it is not made a cover to legislation incongruous in

itself." (*Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295; *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259; *State v. Doherty,* 3 Ida. 384, 29 Pac. 855; *Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692.)

It is not essential that a method of dissolution be provided in the act under which the corporation is formed. (28 Cyc. 250.)

· The legislature is not only permitted to delegate the power of local taxation, but is prohibited from imposing taxes for local purposes by sec. 6, art. 7, of the constitution. (*Fenton v. Board,* 20 Ida. 392, 119 Pac. 41.)

Irrespective of the validity of the appointment of Fred W. Gooding as highway district commissioner, he is nevertheless a *de facto* officer, and the validity of the bonds issued by the district does not depend upon the legality of his appointment. (29 Cyc. 1389; *Reclamation Dist. v. Sherman,* 11 Cal. App. 399, 105 Pac. 277.)

The lack of eligibility in one member of a board does not affect the validity of any step taken by the board wherein a majority concurred. (*People v. Hecht,* 105 Cal. 621, 45 Am. St. 96, 38 Pac. 941, 27 L. R. A. 203.)

A highway district may properly include within its borders a town or village. (*Board of Directors v. Tregea,* 88 Cal. 351, 26 Pac. 237; *Nampa Irr. Dist. v. Brose,* 11 Ida. 474, 83 Pac. 499.)

STEWART, C. J.—The respondent brought this action in the district court for the purpose of securing a writ of mandate commanding the appellant, as secretary of the Shoshone Highway District, to deliver bonds in the sum of $80,000 to the treasurer of said district and to take and file the treasurer's receipt therefor and to charge him therewith.

The Shoshone Highway District was created and organized under the provisions of an act approved March 8, 1911, Sess. Laws 1911, p. 121. Such district authorized the issuing of bonds of said district to the amount of $80,000 under a resolution passed by the highway board of said district. A demurrer and answer were filed and the cause was tried to the

court and finding and judgment were entered in favor of the respondent.

Counsel for appellant upon this appeal contend, first, that the highway district law approved March 8, 1911, is unconstitutional; second, that the provisions of the highway district law were not complied with, in that no registration was had prior to the bond election; third, that the proposed issue of bonds is void, for the reason that one óf the highway commissioners was disqualified for appointment as such commissioner.

It is argued by counsel for appellant that the act of March 8, 1911, is unconstitutional because the title contains more than one subject, in that it provides: First, for the organization and government of highway districts; the construction, improvement and maintenance of highways therein and a revenue therefor; for the appointment and election of highway boards and other district officers, and defining their duties; second, for the apportionment among municipalities; for the distribution of proceeds of road and bridge county taxes.   This objection is made upon the provisions of sec. 16, art. 3 of the constitution which provides: ''Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title.''

Under this provision of the constitution it is contended by counsel for appellant that the title to the act approved March 8, 1911, Sess. Laws 1911, p. 121, embraces more than one subject, in that it provides for the organization and government of highway districts; the construction, improvement and maintenance of highways therein and a revenue therefor; for the appointment and election of highway boards and other district officers and defining their duties.   The title reads as follows:

''To provide for the organization and government of highway districts, the construction, improvement and mainte-

nance of highways therein and a revenue system therefor; for the appointment and election of highway boards and for other district officers, and defining their duties; for the apportionment among municipalities, the highway district and the county, of the proceeds of road and bridge county taxes; and defining the relations of highway districts to the county and to municipalities included within such districts; repealing acts inconsistent herewith and declaring an emergency.''

The language used in the portion of the title involved in the objection clearly indicates that the matters therein referred to all relate directly to the same subject. The organization and government of highway districts and the construction, improvement and maintenance of highways therein and a revenue system therefor, and the appointment and election of boards and other officers, and defining their duties, are properly connected with the general subject of organization and government of highway districts, and all relate to the same subject matter. (*Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295; *State v. Doherty,* 3 Ida. 384, 29 Pac. 855; *Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692; *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259.)

The second objection to the title is that it embraces two different subjects: First, the organization and government of highway districts, and second, for the apportionment among municipalities. It is argued that the subject of apportionment among municipalities is a separate subject to that of organization of highways. The apportionment among municipalities of revenue collected from taxation made by a highway district under authority granted to said district by legislative enactment, is directly connected with the subject of government of highway districts, and relates directly to the same subject of organization and government of highways, and is not a separate subject to that of organization. (*Hettinger v. Good Road District No. 1,* 19 Ida. 313, 113 Pac. 721.)

In the case of *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259, this court quotes with approval the

language of Judge Cooley as follows: "If all parts of the act have a natural connection and reasonably relate, directly or indirectly, to one general, legitimate subject of legislation, the act is not open to the objection of plurality of subjects." This is clearly true as to the unity of the subjects stated in the title, and the language clearly shows that the "apportionment among municipalities," such as the districts, and the counties, of the proceeds of road and bridge county taxes and the defining of the relations of highway districts to the county and to municipalities included within the district, relate and are connected with the common subject of organization and government of highway districts.

In the case of *Pioneer Irr. Dist. v. Bradley*, 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295, this court had under consideration the title of an act providing for the organization and government of irrigation districts, and in that case many of the objections urged against the title to the present act were presented and fully considered, and after reviewing many authorities upon the subject this court said: "It will be observed from the foregoing that all of the provisions of said act have but one general object, subject, or purpose, and that is the reclamation and irrigation of the desert or arid lands in the state." So it may be said of the title to the act now in question, all the subjects mentioned in the title relate to one general object, subject, or purpose, and that is, the organization and government of highway districts.

It is apparent, therefore, that the title in this case meets every requirement, and is within the provisions of sec. 16, art. 3 of the constitution.

It is next argued by counsel for appellant that the act under consideration is unconstitutional and violates the provisions of sec. 6, art. 7 of the constitution; in that said act provides for double taxation of property in municipal corporations situated within highway districts. This section reads as follows:

"The legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may by law invest in the corporate authorities thereof, re-

spectively, the power to assess and collect taxes for all pur·
poses of such corporation.'' It is argued that inasmuch as
cities, towns and villages of the state are authorized to levy
taxes for highway and street purposes, the legislature has
no power to authorize other municipalities, such as highway
districts, which include cities, towns and' villages, to levy a
tax upon the property within cities and towns and villages
for use upon highways and roads outside of the limits of
such cities, towns and villages.

It is clearly provided by the statutes of this state that
cities and villages are authorized to levy taxes for the pur-
pose of raising revenue for the construction and maintenance
of highways, streets and alleys in cities and villages. (Rev.
Codes, sec. 2238.) Authority is also conferred upon the
board of county commissioners to levy a tax for road pur-
poses. (Sec. 1917, Rev. Codes.)

The act now under consideration also authorizes a high-
way district to levy a tax for road and bridge purposes upon
all the property within the district. This includes the
property within the towns and villages within the bound-
aries. of the district (sec. 64). This act also provides
that such highway commissioners in such highway district
shall constitute a highway board and shall have, except as
provided in sec. 64, exclusive general supervision and juris-
diction over all highways within the district. The exception
referred to in sec. 64 is: ''Nothing in this act shall be con-
strued as affecting or impairing any power of taxation or
assessment for local municipal highway purposes on the part
of the authorities of the municipality of any such included
territory. Each incorporated city, town or village, or por-
tion thereof, within a highway district, shall constitute a
separate division of the district under this act,· and the city
council of each such city, and the board of trustees of each
such town or village, so far as relates to their city, town or
village, shall have the powers conferred, and must perform
the duties imposed, upon the highway board of such high-
way district, by this act. Each such city council and board
of trustees must appoint a road overseer, who must, within

such city, town or village, have the powers conferred, and perform the duties, imposed by this act, on deputy directors of highways; in respect to such city councils, boards of trustees and road overseers of any city, town or village, lying within a highway district, the powers and duties of such council, board or road overseer shall be as declared in this section. . . . ."

In sec. 37 of the act in controversy provision is made for the distribution of funds raised by taxation for road and bridge purposes by the board of county commissioners under the laws of the state as follows:

"1. In respect to that portion of such taxes which shall have been assessed and collected within the limits of any included municipality, as defined in section sixty-four hereof, such portion shall be paid and applied as follows:

"(a) To such municipality, twenty-five per cent of so much of such portion as shall consist of the road tax authorized by section 900 of the Political Code; unless by the charter of such municipality or other special law, such municipality may be entitled to a different percentage of such road taxes, and in that case such different percentage so provided by such charter or special law shall be paid to such municipality. . . . .

"(b) To the highway district, seventy per cent of so much of such portion as shall have been realized from the road tax authorized by section 900 of the Political Code; and ninety-five per cent of all of such portion realized from other sources.

"(c) To the county, five per cent of such portion, to be paid to the county treasurer and to be thereafter apportioned by the proper officers between the road and bridge funds of the county.

"2. In respect to that portion of such taxes which shall have been assessed and collected within the highway district and outside of the limits of any included municipality, such portion shall be paid and applied as follows:

"(a) To the highway districts, ninety-five per cent of such portion.

"(b) To the county, five per cent of such portion to be paid to the county treasurer, and to be thereafter apportioned by the proper officers between the road and bridge funds of the county."

Section 41 of the act provides for the apportionment of the taxes levied by the highway board under sec. 40 of the act as follows:

"The entire proceeds of taxes levied for bridge purposes and the proceeds of all taxes assessed and collected outside of the limits of included municipalities, as defined in section sixty-four hereof, shall be paid to the highway district. In respect to all taxes levied by the highway board for road purposes under section forty hereof, that portion thereof assessed and collected within the limits of any included municipality shall be paid and applied as follows:

"1. To such municipality, twenty-five per cent thereof.

"2. To the highway district, seventy-five per cent thereof."

So it will be seen that by the provisions of this law the taxes levied for bridge purposes and the proceeds of all taxes assessed and collected outside of the limits of included municipalities are paid to the highway district; that is, the highway district, exclusive of the territory included within the municipality shall be paid and have the use of the entire proceeds of taxes levied for bridge purposes, and the proceeds of all taxes assessed and collected outside of the limits of cities, towns and villages, and all taxes levied and collected by the highway board within the limits of any city, town or village within a highway district shall be paid and applied as follows: "1. To such municipality, twenty-five per cent thereof. . . . . 2. To the highway district, seventy-five per cent thereof."

It will thus be seen by the provisions of the act of 1911 that three systems are provided for assessing property within cities, towns and villages for highway purposes: first, the city, town or village; second, the county; third, the highway district; and that two different systems are provided by the act for the apportionment of the fund arising by reason of assessments by the county and the highway district. The

system of apportionment of the fund arising by reason of the assessment of the board of county commissioners under the provisions of this act is substantially the same as that provided by the laws of the state prior to the adoption of the act. The apportionment of the fund arising by reason of the assessment of the highway board relates to a fund arising wholly from the taxation made by the highway board under this statute, and it is especially this assessment which counsel for appellant claims is an additional taxation and amounts to double taxation of the property of cities, towns and villages which may be included within a highway district.

Whether this constitutes double taxation or is a taxation which makes a double burden upon the property owners within cities, towns and villages, depends in a large measure upon the question whether such taxation is used for the same purpose in both instances. A highway district as intended by this act is not a political municipality. It is not created for the purpose of government. It is an entirely different kind of municipality from that of a city, town or village. Its powers are specially limited to the construction of highways upon lines of benefits to the inhabitants and the property within the territory embraced within the district. It is made a taxing district and consists of such territory as may be determined by the county commissioners in creating the same. It is contemplated by the provisions of the statute that the property and the people of the entire district are interested in the construction and improvement of the public highways of the district, and it is created for a special purpose, to wit, the assessment of property within the district for the sole and only purpose of improving the highways within the district.

The subject of taxation is a matter within the province of the legislature of the state, unless there is some specific limitation found in the constitution. (27 Cyc., pp. 607–613; 1 Elliott, Roads and Streets, sec. 475.) The legislature in this instance has seen fit to provide for the creation of highway districts for the purpose only of improving the highways of a section created into a district. It has determined

this matter and what property is subject to taxation therein, and the method of apportioning the fund raised, and it was acting clearly within its constitutional right, and there is no attempt on the part of the legislature to impose taxes for the purpose of any county, city, town or other municipal corporation, but a clear exercise of legislative authority granting to a community, subject to certain restrictions, the right to organize themselves into a municipal corporation with power of local taxation, and the issuing of bonds for public improvements, and the section of the constitution above referred to in no way prohibits such legislative action. A highway district, as created in this act, is not a municipality such as a county, city, town or village, but is an entirely different kind of municipality created for a specific purpose. (*Fenton v. Board of County Commrs.*, 20 Ida. 392, 119 Pac. 41; *Boise Irr. etc. Co. v. Stewart*, 10 Ida. 38, 77 Pac. 25, 321; *Hettinger v. Good Road Dist. No. 1*, 19 Ida. 313, 113 Pac. 721.)

Where, therefore, the legislature of the state, exercising its power over the subject of taxation, passes an act which provides for the creation of a municipality such as a highway district, and authorizes such district to tax the property of said district for the purpose of raising funds for the construction and maintenance of highways within such district, and such district organizes as such, and includes an incorporated city, town or village, which city, town or village has, by reason of its incorporation as such power also to levy a tax within such city, town or village, the taxation made by the highway district under the authority of the legislature is not a double taxation upon the property within the city, town or village. The construction of highways leading to a city, town or village from a country district is not only a benefit to the country outside of such city, town or village, but is a like benefit to such city, town or village, and such taxation being one based upon benefits, is not prohibited by any constitutional provision.

In the case of *Hettinger v. Good Road District No. 1*, 19 Ida. 313, 113 Pac. 721, this court had under consideration an

act of the legislature of the state of Idaho, Sess. Laws 1909, p. 172, in relation to the organization of good road districts, and in that case said: "Sec. 882 of the Rev. Codes authorizes the board of commissioners to levy a general tax upon all the property within the county, including the towns and cities, and the county is required to turn over to such towns and cities one-fourth of the fund thus raised to be expended by the municipalities upon its streets and alleys, and under the provisions of sec. 2238 of the Rev. Codes, towns and cities are given authority to raise an additional fund by special taxation for the same purpose, and the same argument made in this case would apply to sec. 882 with reference to turning over a portion of the general tax levied to a municipality, and likewise many other sections of the statute would be affected by the same course of reasoning; but clearly these various provisions are not double taxation. (*Boise Irr. etc. v. Stewart,* 10 Ida. 38, 77 Pac. 25, 321.)"

Mr. Elliott, in vol. 1, sec. 475, on Roads and Streets, announces the general rule as follows: "The legislature, in the absence of any constitutional provision to the contrary, may provide for taxing districts without regard to the boundaries of counties, townships or municipalities, as well as by following existing political or municipal lines. Highway improvements may be made by a tax on all the property, real and personal, in the taxing district, or by local assessment against the real estate specially benefited. In other words, it is for the legislature to determine in general, within constitutional limitations, on what persons and property the cost or expense of constructing and maintaining highways shall fall and the mode of taxation or manner of raising the fund." This same doctrine is also announced in Page & Jones on Taxation by Assessment, in vol. 1, secs. 552, 553, and other sections following.

In the case of *Byram v. Marion County Commrs.,* 145 Ind. 240, 44 N. E. 357, 33 L. R. A. 476, the supreme court of Indiana had under consideration a statute which provided for assessing property in a city by the county board of turnpike directors for repairing, maintaining and paying for

material for free gravel roads or turnpikes within the county, although situated wholly without the limits of the corporation, where such statute makes the taxing district consist of the whole county, and the court says: "It is for the legislature, and not for the courts, to determine whether or not city property included in a taxing district under a gravel-road statute is benefited by the repair of the gravel roads, although they are outside of the city."

In the case of *State v. Arnold,* 136 Mo. 446, 38 S. W. 79, the supreme court of Missouri had under consideration a similar question and said: "But, assuming that the section has general application to all cities and towns in the state, it only purports to exempt them from paying county road taxes when their charter or the general law by which they are governed exempt them"; and held that property in a town incorporated by special charter and not located in a county under township organization is not exempt from liability for improvement of county roads outside the town where its charter does not provide for such exemption.

Judge Cooley, in his work on Taxation, p. 113, says: "Taxing districts may be as numerous as the purposes for which taxes are levied. It is not essential that the political districts of the state shall be the same as the taxing districts, but special districts may be established for special purposes wholly ignoring the political divisions. . . . . The political subdivisions of the state are necessarily regarded in taxation only when the tax itself is for a purpose specially pertaining to one of them in its political capacity so that, as already stated, the nature of the tax will determine the district."

In the case of *Board of Commissioners v. Harrell,* 147 Ind. 500, 46 N. W. 124, the supreme court of Indiana had under consideration a similar question and said: "The power of the legislature in matters of taxation is unlimited, except as restricted by the constitution. The legislature, in the exercise of that power, in making local improvements may create a special taxing district without regard to the boundaries of counties, townships, or municipalities." In that case it appears that the taxing districts were the same as the

town's boundaries, and that the town was a corporation and had power to make contracts and was represented by officers, and the court said: ''The special tax levied by the board of commissioners upon all the property of the taxing district is not an indebtedness of the township or townships composing such taxing district, but is an indebtedness of the taxpayers, secured by a lien on their property, and for which only their property is liable; and is no more to be counted in ascertaining the indebtedness of a township than the individual indebtedness of the inhabitants of the township. The constitutional inhibition is a limit on the power to become indebted, and does not apply in any way to taxes and assessments upon property for the benefit thereto of a public improvement.''

Under the principles announced in the foregoing decisions, and under the constitution of this state, we think it is clear that the provisions made in the act now under consideration with reference to the improvement of highways of the state and the assessment of property therein were clearly within the power of the legislature of the state, and that the legislature was fully authorized to delegate to highway districts the power of local taxation.

It is next contended that there are several provisions of the act which are not fully expressed in the title: First, it is argued that sec. 2 provides for the reorganization of highways, and that such subject matter is not expressed in the title; second, that sec. 9 provides for the construction of the law, and that such subject is not embraced in the title; third, that sec. 23 provides for a penal offense, and that such subject is not expressed in the title; fourth, that sec. 13 declares every highway district organized under this act shall be a body corporate, and that such subject is not embraced in the title. There is no merit in this contention. The cases heretofore cited, decided by this court upon the sufficiency of the title to a bill passed by the legislature, fully cover this subject. This court, in *Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295, quotes with approval *People v. Parks,* 58 Cal. 624, in which the supreme court of Cali-

fornia says: "Provisions of an act may be numerous; but however numerous, if they can be, by fair intendment, considered as falling within the subject matter of legislation, or necessary as ends and means to the attainment of the subject, the act will not conflict with the constitution." The objections made clearly fall within the rule approved above and are within the subject matter stated in the title, and are necessary as ends and means to the attainment of the subject of organization and government of highway districts.

It is also argued that the act involved is unconstitutional, because it provides no method of dissolution of the body corporate into which a highway district is created. While it is true that the act itself makes no provision by which its corporate character may be dissolved, yet that fact would not make the act unconstitutional, inasmuch as the act creating such municipal corporation could be dissolved by the same power that created it, and there is no provision of the constitution to which our attention has been called which would render such legislation unconstitutional because of a failure to provide for its dissolution. In 28 Cyc. 250, the general rule is declared: "The American doctrine in regard to municipal corporations seems to be that they can be dissolved only as the direct result of legislative action. This may be effected either by repeal of the charter or by express provision contained in the charter or general law that the corporation shall cease and determine for failure to comply with certain conditions therein prescribed; or by the expiration of the time limited for the existence of the corporation." If, therefore, the legislature of the state should deem it proper to repeal such highway district law, or provide for the dissolution of highway districts, it would be competent and within the power of legislative authority.

It is further contended that the trial court erred in rendering a judgment for the respondent, for the reason that no registration was held for the election, held on the 2d day of November, 1911, for the purpose of voting upon the issuing of bonds for the said highway district. Sec. 59 of the highway district law, which provides for the holding of an election

for the purpose of voting upon the issuing of bonds, among other things provides: "Such election shall be conducted as nearly as practicable in accordance with the general laws of the state. If at said election, as provided for in this section, two-thirds of the qualified electors who are residents of such district, voting on such question at such election, assent to the issuing of said bonds and the incurring of the indebtedness thereby created for the purpose aforesaid, such bonds so authorized for said purposes shall be issued in the manner hereinafter provided." This is the only provision contained in the act in relation to bond elections held for the purpose of issuing bonds, and no provision is made for the registration of voters. In this same section it is provided: "The resolution shall also provide for the holding of an election of the qualified electors of such district, of which notice in general terms shall be given by publication for ten days in a newspaper published in the county."

Under the general election laws of the state, sec. 394, as amended by Laws of 1911, p. 580, "The said board must prior to the first day of July next preceding any general election cause notice to be given for not less than fifteen days by publication in some newspaper published in the county. . . . ." Under the highway district law it would be impossible to give this fifteen days' notice by publication prior to the time of holding the election. If the highway board gave the notice as provided by sec. 59 of the highway district law, there would be only one day in which the people might be allowed to register, and there would not be time or opportunity to give a fair registration. By reference to sec. 344 of the Rev. Codes we find that the legislature has declared that the provisions of the statute with reference to elections do not apply to school elections "and such other elections as are not in these codes elsewhere specifically provided." This section clearly excepts elections held for school districts and other elections specifically provided for from the provisions of the statute requiring registration for election of officers provided by the constitution and the laws of the state, and therefore no registration is required for a

bond election under the highway district law. There is no constitutional requirement that registration must be had for elections in special municipal corporations created by legislative enactment, such as irrigation districts, drainage districts and good road districts, and such registration is entirely left to the legislature.

It is next urged that the trial court erred in rendering judgment in this case for the reason that Fred W. Gooding, president of the board of highway commissioners, was a member of the legislature that created the said highway district, therefore that he was disqualified from acting as such highway commissioner. We shall not in this case determine whether Fred W. Gooding was qualified to accept the position of highway commissioner in a highway district under the act of March 8, 1911. He was appointed to such office of highway commissioner by the governor of the state, the appointing authority designated by the laws of the state; he qualified as such, and has been actually in possession of the office and performing the duties attached thereto by virtue of his appointment; no one has questioned up to the commencement of this action his authority to so act. He was, therefore, a *de facto* officer and held the office under the color of title to the office under appointment by the governor of the state, the designated appointive authority.

In the case of *Reclamation Dist. v. Sherman,* 11 Cal. App. 399, 105 Pac. 277, the supreme court of California in a similar case held in the syllabus as follows: "The office of commissioner to make an assessment for reclamation purposes is created by statute, and is a *de jure* officer, and, when one who is appointed, qualifies and participates in the performance of the duties of the commissioners, he acts under color of office and is a *de facto* officer, and as such his acts are valid; an 'officer *de facto*' being one whose acts the law, upon principles of policy and justice, will hold valid as far as they involve the interests of the public and third persons where he holds under color of a known appointment, void because the officer is not eligible, such ineligibility being unknown to the public." But even though it be con-

ceded that Gooding was ineligible as a member of such board, yet such fact would not invalidate the bonds involved in this case, for it appears by the law that the board consists of three members, and the proceedings of the board show in the calling of the election and the issuing of the bonds in controversy that the three members voted unanimously, and therefore even though Gooding was disqualified, the majority of the board and the controlling power of the board approved and indorsed the entire procedure.

In the case of *People v. Hecht,* 105 Cal. 621, 45 Am. St. 96, 38 Pac. 941, 27 L. R. A. 203, the supreme court of California in discussing a similar question, held:

"If a majority possesses all the authority of the whole, then such majority must be competent to its exercise. For all practical purposes the majority becomes the full board. It is the receptacle—the reservoir—of all the authority conferred upon the whole, and its action, it is submitted, cannot be stayed by the nonaction, failure to qualify, absence, death, or want of eligibility of the minority."

Applying this rule to the case in question, the ineligibility of one member of the board—Gooding—was a minority of the board, and the majority, the other two members, both being qualified and acting, was sufficient to exercise the power necessary to make such power the action of the board in the procedure calling an election and issuing the bonds, and therefore the action of the majority was the action of the board, and fully authorized and legalized the procedure and action of the board in calling the election and issuing the bonds.

The judgment is therefore *affirmed.* Costs awarded to respondent.

Sullivan, J., concurs.

Ailshie, J., concurs in sustaining the validity of the statute.