(No. 6339. March 19, 1936.)

In the Matter of the Application of T. H. ROGERS, JOHN
RANDALL and F. G. PITZEN for Writ of Habeas
Corpus.

[57 Pac. (2d) 342.]

A. L. Morgan and Jack McQuade, for Petitioners.

Bert H. Miller, Attorney General, and Murray Estes, County Attorney, for the State and the Sheriff.

AILSHIE, J.—This is an original application for a writ of *habeas corpus*. The petitioners, T. H. Rogers, John Randall and F. G. Pitzen, allege that they are being restrained of their liberties by the sheriff of Latah County under an order of the probate judge of said county, sitting as a committing magistrate, for a preliminary examination under a complaint, charging them with violation of sec. 57–701, I. C. A., known as the Anti-Nepotism Law. The writ issued, return has been waived and the sheriff admits the facts as alleged in the petition, and an issue of law has been joined as to whether or not the complaint under which they are held charges the commission of a public offense. The complaint alleges that during the year 1935 they, being then and there commissioners of Highway District No. 2 of Latah County, State of Idaho, "did then and there wilfully, knowingly, and unlawfully furnish employment to one Cecil Rogers, a relative of the aforesaid T. H. Rogers, within the third degree to a position as road foreman of the aforesaid district, then and there knowing that his salary, wages, pay or compensation was to

be paid out of public funds and that the said Cecil Rogers
has during the year 1935 received compensation from said
district with the full knowledge and consent of the aforesaid
defendants.''

 The contention is made by the petitioners that the
Anti-Nepotism Act does not apply to commissioners or other
officers of *highway districts*. The statute involved reads as
follows:

Sec. 57–701, I. C. A.:

''An executive, legislative, judicial, ministerial, or other
officer of this state or of any district, county, city, or other
municipal subdivision of the state, including road districts,
who appoints or votes for the appointment of any person
related to him or to any of his associates in office by affinity
or consanguinity within the third degree, to any clerkship,
office, position, employment, or duty, when the salary, wages,
pay or compensation of such appointee is to be paid out of
public funds or fees of office, or who appoints or furnishes
employment to any person whose salary, wages, pay, or com-
pensation is to be paid out of public funds or fees of office,
and who is related by either blood or marriage within the
third degree to any other executive, legislative, judicial, min-
isterial, or other public officer when such appointment is
made on the agreement or promise of such other officer or
any other public officer to appoint or furnish employment
to any one so related to the officer making or voting for such
appointment, is guilty of a misdemeanor involving official
misconduct and upon conviction thereof shall be punished by
fine of not less than ten dollars or more than $1000, and such
officer making such appointment shall forfeit his office and
be ineligible for appointment to such office for one year there-
after.''

This act was adopted in February, 1915. The first High-
way District Act was adopted in 1911 (1911 Sess. Laws, chap.
55, p. 121) and the first Good Road Districts Act was adopted
in 1905 (1905 Sess. Laws, p. 237). Prior to the adoption of
the Good Road and the Highway District Acts it was the
duty of the county commissioners to divide their respective
counties into road districts and the supervision and manage-
ment of these districts was left entirely to the commissioners.

Soon after the adoption of the Highway District Law the Good Road Districts Act fell into disuse and was supplanted by the formation of highway districts. These districts are voluntary organizations. (*Shoshone Highway Dist. v. Anderson*, 22 Ida. 109, 125 Pac. 219; *Strickfaden v. Greencreek Highway Dist.*, 42 Ida. 738, 248 Pac. 456, 49 A. L. R. 1057.) The matter of the organization and operation of good road districts and highway districts was well known to the public and the members of the legislature at the time of the adoption of the Anti-Nepotism Act. Notwithstanding that fact the legislature in enumerating the persons, boards and bodies falling within the prohibitions of the act, said:

"An executive, legislative, judicial, ministerial, or other officer of this state or of any district, county, city, or other municipal subdivision of the state, *including road districts*" as the persons prohibited making the employments.

Now it seems improbable that, if the legislature intended to include "good road districts" and "highway districts," they would not have merely said: "including road districts" and stopped with that enumeration. Had the organization, control and operation of a road district been the same or similar to that of good road districts and highways districts, then there might be some reason for supposing that they intended to include *all kinds* of *road* districts when they said "including road districts." But such was not the case. Road districts were involuntary districts, the boundaries of which were arbitrarily fixed by the county commissioners and controlled and operated by the commissioners, who are the executive officers of the entire county (see 1887 Rev. Stats., sec. 870, subd. 1; sec. 873, amended Laws 1891, p. 190); whereas a highway district has to be organized by petition of the residents in the district, regular organization proceedings are taken and an election is held, at which the electors both vote on the question as to whether or not the territory designated shall be organized into a district, and secondly, express their choice for commissioners of the district. Substantially the same procedure had to be pursued to organize a good road district. (C. S., secs. 1477–1489; I. C. A., secs. 39–1401 to 39–1417.)

It must be conceded that there is apparently much greater need in these latter days for the application of this act to the officers of a highway district than to an ordinary road district. The answer to that, however, may lie in the fact that members of the legislature when they passed the Anti-Nepotism Act had observed the favoritism that was often shown by commissioners in the appointment of "road overseers," the purchase of road materials and hiring of workmen; and that highway districts and good road districts were self-governing bodies and had not, up to that time, advanced very far in the issuance of bonds and building and construction of highways, or taken on some of the more recent evils with which they are periodically charged.

If we were inclined to doubt the force of the contention made by the petitioners here that they do not come within the provisions of the act, such doubt would necessarily have to be resolved in favor of their contention when we come to consider the case of *Barton v. Alexander*, 27 Ida. 286, 148 Pac. 471, Ann. Cas. 1917D, 729. The act (sec. 57–701) was approved February 18, 1915, and in April of the same year the Barton case was instituted against the Governor, Attorney General and Secretary of State, as constituting the board of trustees of the Soldiers' Home, for the purpose, as stated by the court "of obtaining from this court the proper construction to be placed upon the several provisions of said Anti-Nepotism Act." The primary purpose of the proceeding was to determine whether or not the matron of the home, by reason of her relationship to the commandant, could continue in such position under the provisions of this act, and also to determine under what rule the degree of relationship should be computed; i. e., whether under the canon or common law or under the Roman or civil law.

After discussing and deciding the specific questions which it was necessary for the court to decide, the writer of the opinion proceeded to discuss various other questions, in each instance premising the discussion with "it is next contended" or "the next question is," etc. Reference to the briefs presented in the case discloses that all the various questions considered in the opinion were argued and discussed by the respective counsel in their briefs and dealt with as issues to be decided. In concluding the opinion the court said:

"The next question is: Are school districts, irrigation, drainage and improvement districts included within the provisions of said law?

"It will be observed from the title that it applies to municipal subdivisions of the state and the first section of said act is in part as follows: 'That executive, legislative, judicial, ministerial or other officer of this state or of any district, county, city, or other municipal subdivision of the state, including road districts,' etc. The title as well as the body of the act clearly indicates that it was intended to apply to municipal subdivisions of the state and also to road districts. The act having especially enumerated only one subdivision, to wit, a road district, that is not a municipal subdivision, all other subdivisions of the state which are not municipal subdivisions are excluded, hence it does not apply to school districts, irrigation districts, drainage districts or improvement districts, since they are not municipal subdivisions of the state. This court held in *Fenton v. Board of Commrs.*, 20 Ida. 392, 119 Pac. 41, that a school district is not a municipal corporation within the meaning of sec. 6, art. 7, of the constitution. Said act is only intended to apply to municipal subdivisions of the state and road districts."

Thus it will be seen that this court held in that case that "a road district .... is not a municipal subdivision" within the meaning of this act and that "all other subdivisions of the state which are not municipal subdivisions are excluded, hence it does not apply to school districts, irrigation districts, drainage districts or improvement districts, since they are not municipal subdivisions of the state."

■ It will be seen from the foregoing that in the Barton case the court invoked the rule that "the expression of one thing is the exclusion of another," which, when applied to the statute under consideration, would imply that the legislature in naming "road districts" did not intend to include highway districts; or to put it otherwise, intended to exempt highway and good road districts from its operation. That decision has been recognized for 21 years and has never been questioned in the meanwhile. The nearest approach to an amendment of the act, of which we are aware, is to be found in subd. 14 of sec. 32–615, I. C. A. (which adopted the school

district code in the 1921 session of the legislature) ; that provides that:

"No trustee of any school district of any kind in the state of Idaho shall vote to elect any relative of his or of his immediate family to the position of superintendent, principal, or teacher of any school," etc.

Had it been the wish of the legislature to have highway district officers included within the prohibition of the nepotism act they would have amended the act in some manner so as to express their desire. Their recognition of it for more than 20 years as construed by the Barton case furnishes a strong presumption that they were satisfied with the construction placed on the act.

It is argued by the attorney general that this court has, since deciding the Barton case, held that a highway district is a "municipal corporation" and that such a holding necessarily brings the commissioners of a highway district within the terms of the statute which includes "other municipal subdivision of the state." It is true that there has been considerable discussion and variety of expressions in the opinions of this court in defining the exact status and corporate existence and nomenclature of a highway district. This appears to have been due more to the manner of expression of the writers of the various opinions than to any real or apparent doubt as to the character of a highway district corporation. In *Shoshone Highway Dist. v. Anderson,* 22 Ida. 109, 119, 125 Pac. 219, which was the first case that discussed the corporate character of a district, the court said:

"A highway district, as created in this act, *is not a municipality* such as a county, city, town or village, but is an entirely different kind of municipality created for a specific purpose."

Substantially the same language was employed in designating a highway district in *In re Fidelity State Bank of Orofino,* 35 Ida. 797, 209 Pac. 449, 31 A. L. R. 781, and in *Oliver v. Wendell Highway Dist.,* 38 Ida. 635, 224 Pac. 81. In *Grangeville Highway Dist. v. Ailshie,* 48 Ida. 592, 593, 285 Pac. 481, it was referred to merely as "a body politic and corporate"; and in *State ex rel. McKelvey v. Barnes,* 55 Ida. 578, 45 Pac. (2d) 293, 297, in speaking of the right of

a highway district to intervene in a suit pending between other parties, the district as intervener was referred to as "the highway district, the corporate representative of the people."

In *Strickfaden v. Greencreek Highway Dist.*, 42 Ida. 738, 748, 248 Pac. 456, 49 A. L. R. 1057, *the principal question* which confronted this court was to determine whether a highway district was a public or governmental corporation, in the same class with counties or in the class with cities, towns and villages, and the court concluded that the highway district exercises no governmental functions and is a purely business and proprietary corporation, saying:

"Highway districts as intended by the Highway District Law, *supra,* cannot be said to correspond identically with either public corporations, or counties, or municipal corporations, or cities, towns and villages. They are *quasi*-municipal corporations, *not political municipalities,* not created for purposes of government, but for a special purpose, namely, that of improving the highways within the district."

It will be seen from the cases above cited that this court has uniformly dealt with highway districts as a class of *public, proprietary corporations* organized under general law and not created by special statutory acts. The legislature by general law has provided the manner and method of organization of these districts and they are all organized voluntarily and alike. For want of a better designation, they have often been referred to as *quasi-municipal* corporations. It will be observed, however, that no one of these cases in any respect modifies the holding of *Barton v. Alexander* and none deals with the question there considered.

We conclude that the Anti-Nepotism Act does not apply to officers of highway districts. It follows that the petitioners should be discharged and it is so ordered.

Givens, C. J., and Holden, J., concur.

Justice Budge did not sit at the hearing or participate in the decision.

Justice Morgan, deeming himself disqualified, did not sit at the hearing or participate in the opinion.