(No. 5111. November 5, 1927.)

J. M. STARK and OSCAR MOBERLY, a Copartnership Doing Business as STARK & MOBERLY, Appellants, v. MARY C. McLAUGHLIN, Treasurer and *Ex-officio* Tax Collector of Elmore County, State of Idaho, and SMITH PRAIRIE HIGHWAY DISTRICT, of Elmore County, Idaho, Respondents.

[261 Pac. 244.]

HIGHWAY DISTRICTS—TAXATION—CONSTITUTIONAL LAW—CONSTRUCTION OF DECISIONS.

1.  Each case must be construed with reference to the circumstanes thereof and the questions under consideration, and limited to those points of law raised by the record, considered by the court, and necessary to the determination of the case.

2.  The conclusion reached by the court is its decision, while what is said is its opinion and reason for its decision, and is to be construed, if it reasonably can be, to support, and not refute, the decision and conclusion.

3.  The inquiry, after portions of a state law have been declared by federal court to violate federal constitution, whether the remaining portions are sufficient in themselves, so that it cannot be said that the entire act fails, ordinarily presents no federal question, so that any decision thereon by the federal court is not binding on the state court.

4.  Unless a court can say that it clearly appears that a statute with unconstitutional portions eliminated would not have been enacted, it should sustain the remaining portions.

5.  The Highway District Law, under C. S., secs. 1490, 1492–1495, 1510, 1551, 1552, 1554, 1555, 3434, 3509, does not deprive an owner of property without due process of law or deny the equal protection of the law, either in the organization of a district or in the issuance of road and bridge bonds, with required provision for levy of taxes on all the property of the district for their payment; the organization of the district and also the issuance of bonds being determined by election on notice with right of appeal to the court.

APPEAL from the District Court of the Third Judicial District, for Elmore County. Hon. Hugh A. Baker, Judge.

Action to recover taxes paid under protest. Judgment for defendants. *Affirmed.*

C. S. Hunter, for Appellants.

Taxes levied and collected illegally may be recovered by the taxpayer upon notice to the tax collector that such taxes are regarded as illegal, the same paid under protest and that suit will be instituted to recover the amount so paid. (Sess. Laws 1921, chap. 107, p. 249; *Shoup v. Willis,* 2 Ida. 120, 6 Pac. 124; *Idaho Irr. Co. v. Lincoln Co.,* 28 Ida. 98, 152 Pac. 1058.)

A highway district attempted to be organized under the provisions of C. S., chap. 66, is a special assessment district. (*Shoshone Highway Dist. v. Anderson,* 22 Ida. 109, 125 Pac. 219; *Strickfaden v. Greencreek Highway Dist.,* 42 Ida. 738, 49 A. L. R. 1057, 248 Pac. 456; *Kimama High. Dist. v. Oregon Short Line R. Co.,* 298 Fed. 431; *Oregon Short Line R. Co. v. Kimama Highway Dist.,* 287 Fed. 734; *Browning v. Hooper,* 269 U. S. 396, 46 Sup. Ct. 141, 70 L. ed. 330.)

The provisions of chap. 66 relating to formation of highway districts are unconstitutional in that no provision is made for legislative determination of benefits to property

Publisher's Note.

1. What constitutes *dictum* of court, see note in **Ann. Cas.** 1912C, 1248. See, also, 7 **R. C. L.** 1014.

2. See 7 **R. C. L.** 1015.

3. See 7 **R. C. L.** 1014.

4. See 6 **R. C. L.** 121.

See Constitutional Law, 12 **C. J.,** sec. 892, p. 1156, n. 82; sec. 1066, p. 1264, n. 46, p. 1265, n. 47.

Courts, 15 **C. J.,** sec. 317, p. 929, n. 72; sec. 376, p. 970, n. 31, 32, 35.

Highways, 29 **C. J.,** sec. 270, p. 554, n. 72, p. 555, n. 73.

Statutes, 36 **Cyc.,** p. 976, n. 27.

within the proposed district, or as to the extent thereof, nor any opportunity afforded to property owners to protest the forming of the district. (*Browning v. Hooper, supra; Village of Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 43 L. ed. 443; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369; *Embree v. Kansas City Road Dist.,* 240 U. S. 242, 36 Sup. Ct. 317, 60 L. ed. 624; *Oregon Short Line R. Co. v. Clark County Highway Dist.,* 17 Fed. (2d) 125; *Kimama Highway Dist. v. Oregon Short Line Ry. Co.,* 298 Fed. 431; *Oregon Short Line Ry. Co. v. Kimama Highway Dist.,* 267 Fed. 734, 298 Fed. 431; *Booth v. Groves,* 43 Ida. 703, 255 Pac. 638.)

Sess. Laws 1927, chap. 5, is unconstitutional and in violation of sec. 1, art. 13 of the constitution of Idaho and the 14th amendment to the constitution of the United States. (See authorities above cited.)

Chapter 5, sec. 4, of Sess. Laws 1927, is repugnant to the constitution in that a debt of a highway district is attempted to be legalized which exceeds the constitutional limitations. (*Dunbar v. Board of Commrs.,* 5 Ida. 407, 49 Pac. 409; *Byrns v. Moscow,* 21 Ida. 398, 121 Pac. 1034; *Boise Dev. Co. v. Boise City,* 26 Ida. 347, 143 Pac. 531; *Allen v. Doumecq High. Dist.,* 33 Ida. 249, 192 Pac. 662.)

Sess. Laws 1927, chap. 5, is retroactive in character and prohibited by the constitution. (Const., art. 11, sec. 12; *Evans v. City of Denver,* 26 Colo. 193, 57 Pac. 696; Black on Constitutional Law, p. 758.)

Local and Special Laws of Idaho 1927, chap. 105, is a special and local act. (*Mix v. Board of Commrs. of Nez Perce Co.,* 18 Ida. 695, 112 Pac. 215, 32 L. R. A., N. S., 534; *Gillesby v. Board of Commrs.,* 17 Ida. 586, 107 Pac. 71; *Jones v. Power County,* 27 Ida. 656, 150 Pac. 35.)

Chapter 105 attempts to provide for the assessment and collection of taxes and the creation of liens on the property within the district in violation of the constitution. (Const., art. 3, sec. 19; *Bannock County v. Bunting & Co.,* 4 Ida. 156, 37 Pac. 277; *McNutt v. Lemhi County,* 12 Ida. 63, 84 Pac. 1054; *Boise Dev. Co. v. Boise City, supra.*)

The defendant highway district has not had, nor does it now have, any existence either as a *de facto* or a *de jure* corporation. (*Norton v. Shelby,* 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. ed. 178; *United States v. Royer,* 268 U. S. 394, 45 Sup. Ct. 519, 69 L. ed. 1011; 1 Words & Phrases, 2d series, p. 1210; 6 R. C. L., sec. 117, Constitutional Law; 7 R. C. L., sec. 43, Corporations; 7 McQuillin on Munic. Corp., p. 151; *State v. Malcom,* 39 Ida. 185, 226 Pac. 1083; *Idaho County v. Fenn High. Dist.,* 43 Ida. 233, 253 Pac. 377; *Brandenstein v. Hoke,* 101 Cal. 131, 35 Pac. 562.)

Special Laws 1927, chap. 105, attempts to create a corporation in violation of the constitution. (*Miller & Lux v. Board of Supervisors of Madera County,* 189 Cal. 254, 208 Pac. 304; *People v. Levee District No. 6,* 131 Cal. 30, 63 Pac. 676; *People v. Van Nuys Lighting Dist.,* 173 Cal. 792, Ann. Cas. 1918D, 265, 162 Pac. 97.)

R. W. Katerndahl, for Respondents.

It is permissible under the constitution, and as declared by the supreme court, to construct highways by general taxation by and through the scheme of the division of counties into a number of taxing districts with equalizing tax features providing for an equalization of highway tax burdens in proportion to the relative benefits received by adjacent taxing districts, for the general improvement and further creation and development of the public highways therein and of a system of public highways therein. (C. S., chap. 66, sec. 1508, as amended by Sess. Laws 1923, chap. 77, p. 86; *Shoshone Highway Dist. v. Anderson,* 22 Ida. 109, 125 Pac. 129.)

In every Idaho highway district there has existed at all times a *de jure* municipal corporate existence with full power to express a constitutional "assent" to the issuance of bonds, and with full constitutional power to issue the same, if, prior to such issuance, or subsequent thereto, there be a process of "notice and hearing" afforded, or if the legislature legislates with respect to those features requiring "notice and hearing" in such a way as to dispense constitu-

tionally with the necessity thereof, viz., by constitutional curative legislation. (C. S., chap. 66; *Imperial Water Co. v. Imperial County,* 162 Cal. 14, 120 Pac. 780; *Clapp v. Otoe County,* 104 Fed. 473, 45 C. C. A. 579; *Schneck* v. *City of Jeffersonville,* 152 Ind. 204, 52 N. E. 212.)

The decision of the supreme court in the Archer county case indicates that that court would declare an Idaho highway district not a "local improvement" district within the meaning of that case. (*Browning v. Hooper,* 269 U. S. 396, 44 Sup. Ct. 141, 70 L. ed. 330; *McGilvery v. City of Lewiston,* 13 Ida. 338, 90 Pac. 348; *Byrns v. Moscow,* 21 Ida. 398, 121 Pac. 1034; *Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785; *Independent Highway Dist. v. Ada County,* 24 Ida. 416, 134 Pac. 542.)

The Idaho law comprising the provisions of the highway district law and other statutes of the state, supplemented by the effect of supreme court rulings, afford to all "aggrieved" persons "notice" and an "opportunity" to be heard and to raise upon hearing all constitutional questions involved in the creation of the highway district and in the levy of any highway district tax, thus affording "due process of law." (*Pioneer Irr. Dist. v. Walker,* 20 Ida. 604, 119 Pac. 304; C. S., sec. 3434; *Inland Co. v. Thompson,* 11 Ida. 508, 114 Am. St. 274, 7 Ann. Cas. 862, 83 Pac. 935; *First etc. Bank v. Washington Co.,* 17 Ida. 306, 105 Pac. 1053; *Hagar v. Reclamation Dist.,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. ed. 569; *Northern Pac. Ry. v. Kootenai County,* 19 Ida. 75, 112 Pac. 320.)

The constitution contains no inhibition against the creation of highway districts by special law. They may be created either under a "general law" or directly by "special law." No "vested" rights are violated in such creation and no question under the federal constitution is raised thereby. Creation of such taxing districts may be had by prospective special act or by proceedings under a general act operating prospectively; and "curative" legislation not being prohibited by the constitution, organization defects may be corrected or supplemented by curative or ratifying legislation, under the constitution. (*Valley Farms Co. v. West-*

*chester,* 261 U. S. 155, 43 Sup. Ct. 261, 67 L. ed. 585; *Shoshone Highway Dist. v. Anderson,* 22 Ida. 109, 125 Pac. 219; *Strickfaden v. Greencreek Highway Dist.,* 42 Ida. 738, 49 A. L. R. 1057, 248 Pac. 457; Hill's Cases on Constitutional Law (1926), p. 645.)

It is not necessary in such curative legislation that the legislature shall expressly "find" or make an express "determination" of benefits. The mere creation of the taxing district or the mere "organization" and "validation" of a district, or districts, theretofore organized, in itself involves a legislative conclusion as to the fact of benefit and as to the proper apportionment of benefits under the general rule of *ad valorem* tax apportionment prescribed by the general law. (Judson on Taxation, par. 106; Page & Jones on Taxation by Assessment, par. 727; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369; 25 R. C. L., p. 109.)

Identically similar general and special validating acts have been upheld by the following federal and state courts: *Dunn v. Ford Bend County,* 17 Fed. (2d) 329; *Tom Green County v. Moody,* 116 Tex. 299, 289 S. W. 381.

R. W. Beckwith, Prosecuting Attorney, Elmore County, Frank L. Stephan, Attorney General, and S. E. Blaine, Leon M. Fisk, Harry O. McDougall and Alfred C. Cordon, Assistant Attorneys General, for Respondents.

The unconstitutionality of an act of the legislature must clearly appear, and if there is reasonable doubt as to the constitutionality, that doubt must be resolved in favor of the act. (*Smallwood v. Jeter,* 42 Ida. 169, 224 Pac. 149; *Ingard v. Barker,* 27 Ida. 124, 147 Pac. 293.)

C. S., chap. 66, known as the Idaho Highway Law, is constitutional.

In the creation of a special assessment district the legislature may determine the benefits and when such benefits are determined by the legislature its action is conclusive and beyond review. (*Spencer v. Merchant,* 125 U. S. 345, 8 Sup. Ct. 921, 31 L. ed. 763; *Wagner v. Baltimore,* 239 U. S.

207, 36 Sup. Ct. 66, 60 L. ed. 230; *Valley Farms Co. v. Westchester,* 261 U. S. 155, 43 Sup. Ct. 261, 67 L. ed. 585; Judson on Taxation, par. 106; Page & Jones, Taxation by Assessment, par. 727; *Browning v. Hooper,* 269 U. S. 396, 46 Sup. Ct. 141, 70 L. ed. 330.)

The legislature in enacting curative laws may ratify an election previously held and comply with the provisions of art. 8, sec. 3, of the constitution. (*Anderson v. Township of Santa Anna,* 116 U. S. 356, 6 Sup. Ct. 413, 29 L. ed. 633; *Grenada County v. Brown,* 112 U. S. 261, 5 Sup. Ct. 125, 28 L. ed. 704; *County of Leavenworth v. Barnes,* 94 U. S. 70, 24 L. ed. 63; *Cowgill v. Long,* 15 Ill. 202; *Dunn v. Ft. Bend County,* 17 Fed. (2d) 329.)

Sess. Laws 1927, chap. 5, and Local and Special Laws 1927, chap. 134, do not create a debt within the meaning of the constitution. (*Schneck v. City of Jeffersonville,* 152 Ind. 204, 52 N. E. 212; *Anderson v. Township of Santa Anna, supra; State v. Dickerman,* 16 Mont. 278, 40 Pac. 698.)

A highway district may be created by a special law. (*Boise City Nat. Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93; Const., art. 11, sec. 2; Journal, Idaho Constitutional Convention, p. 808; *Carpenter v. People,* 8 Colo. 116, 5 Pac. 828; *Reclamation Dist. No. 70 v. Sherman,* 11 Cal. App. 399, 105 Pac. 277; *Angus v. Browning,* 130 Cal. 502, 62 Pac. 827; *City of Pullman v. Hungate,* 8 Wash. 519, 36 Pac. 483.)

Laws of 1927, chap. 5, and Local and Special Laws 1927, chap. 105, do not "create a corporation within the meaning of the constitution." (*Read v. City of Platsmouth,* 107 U. S. 568, 2 Sup. Ct. 208, 27 L. ed. 414.)

A highway district of the state as now constituted is a body politic and a legal taxing district. (C. S., secs. 66, 1490; Sess. Laws 1927, chap. 5; *Smith v. Wilson,* 13 Fed. (2d) 1007; *Morgan v. Independent School Dist. No. 26J,* 36 Ida. 372, 211 Pac. 529.)

H. B. Thompson, *Amicus Curiae.*

A highway district, as provided by C. S., chap. 66, before the amendments of 1927, was not a political municipality; was not created for the purpose of government; but was created for the sole and only purpose of improving the highways within the district, its powers being specially limited to the construction of highways upon lines of benefit to the inhabitants and the property within the territory embraced within the district. (*Shoshone Highway Dist. v. Anderson,* 22 Ida. 109, 125 Pac. 219; *Oregon Short Line R. R. Co. v. Kimama Highway Dist.,* 287 Fed. 734; *Yale Highway Dist. v. Oregon Short Line R. Co.,* 8 Fed. (2d) 676; *Oregon Short Line R. Co. v. Clark County Highway Dist.,* 17 Fed. (2d) 125; *Strickfaden v. Greencreek Highway Dist.,* 42 Ida. 738, 49 A. L. R. 1057, 248 Pac. 456; *Browning v. Hooper,* 269 U. S. 396, 46 Sup. Ct. 141, 70 L. ed. 330.)

A highway district, as provided by C. S., chap. 66, before the amendment of 1927, was, in essence and legal effect, a local improvement district or special assessment area. (*Shoshone Highway Dist. v. Anderson, supra; Oregon Short Line R. Co. v. Kimama Highway Dist., supra; Strickfaden v. Greencreek Highway Dist., supra; Browning v. Hooper, supra.*)

It is essential to due process of law in the creation of a local improvement district, such as a highway district, that the owners be given notice and opportunity to protest and be heard, or that there be a legislative determination of benefits, without which all proceedings are void. (*Browning v. Hooper, supra; Moulton v. Parks,* 64 Cal. 166, 30 Pac. 613; *Brandenstein v. Hoke,* 101 Cal. 131, 35 Pac. 562; *Booth v. Groves,* 43 Ida. 703, 255 Pac. 638.)

The provisions of Sess. Laws 1927, chap. 5, sec. 4, apply only where the bonds have been sold and delivered and the proceeds expended in the construction, improvement and repair of highways within the district. (1927 Sess. Laws, chap. 5, sec. 4, p. 11.)

The attempted creation of the Smith Prairie Highway Dist. was deferred to chap. 105, sec. 1, p. 491, Local and

Special Laws 1927. The legislature was without power to impose upon the Smith Prairie Highway District after or at the time of creating it a "legal taxing district and body politic," an indebtedness for bonds and sinking fund. (Const., art. 8, sec. 3; *Norton v. Shelby County,* 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. ed. 178; *People v. Van Nuys Lighting Dist.,* 173 Cal. 792, Ann. Cas. 1918D, 265, 162 Pac. 97; *Flynn v. Chiappari,* 191 Cal. 139, 215 Pac. 682; *Miller & Lux v. Board of Supervisors,* 189 Cal. 254, 208 Pac. 304.)

The legislature was without power to pass any local or special law: for the assessment or collection of taxes; giving effect to invalid deeds, leases or other instruments; authorizing the creation or extension of any liens, for bonds or otherwise; or creating any corporation. (Const., art. 3, sec. 19.)

Local and Special Laws 1927, chap. 4, is a local law. (6 R. C. L. 419; 25 R. C. L. 814; *Gray v. Taylor,* 227 U. S. 51, 33 Sup. Ct. 199, 57 L. ed. 413; *Gubner v. McClellan,* 130 App. Div. 716, 115 N. Y. Supp. 755.)

The legislature was without power to pass either a general or special law for the benefit of either corporations or individuals holding the bonds of any highway district, retroactive in its operation or imposing upon the taxpayers of the Smith Prairie Highway District a new liability in respect to transactions or considerations already past. (Const., art. 11, sec. 12.)

General Laws 1927, chap. 5, and Local and Special Laws 1927, chap. 4, are retroactive in their operation and impose new liabilities in respect to transactions already past and are hence void. (*Society v. Wheeler,* 2 Gall. 105, Fed. Cas. 13,156; *Dolenty v. Broadwater County,* 45 Mont. 261, 122 Pac. 919.)

There can be no corporation, either *de facto* or *de jure,* without the existence of a valid law providing for its organization. (7 R. C. L. 61, 62; McQuillin on Munic. Corp., sec. 151; *State v. Malcom,* 39 Ida. 185, 226 Pac. 1083.)

A local improvement district organized under an unconstitutional law is not a corporation *de facto* and may set up the unconstitutionality of the law to defeat the collection of bonds issued by it. Such a district is not estopped from denying liability on the bonds by the fact that it retained the proceeds arising from their sale and paid interest on them for several years. (*Brandenstein v. Hoke, supra; Norton v. Shelby County, supra.*)

TAYLOR, J.—Plaintiffs brought this action to recover taxes paid under protest, which had been levied in 1926 by the defendant district "for roads and bridges" and to pay interest upon bonds issued by it in the year 1920 for road-building purposes. The organization of the district in 1918, the election authorizing the bonds in 1919, their issuance and sale in 1920, are alleged and admitted to have been in accord with the provisions of chap. 66 of the Compiled Statutes, and acts amendatory thereof and supplementary thereto. This appeal is from judgment entered after a demurrer to the complaint was sustained.

Plaintiffs contend that chap. 66, C. S., violates art. 1, sec. 13, of the state constitution, and the fourteenth amendment of the federal constitution, "in that no provision is therein made for a legislative determination of benefits to property within the proposed district, or as to the extent thereof, nor an opportunity afforded to property owners to protest the formation of the district," and that they are thus deprived of property without due process of law, and denied equal protection of the laws.

Assuming this, they further contend that chap. 5 of the General Laws, and chap. 105 of the Special and Local Laws, of 1927, the so-called validating acts, are each likewise in violation of the same constitutional provisions, and further of art. 11, sec. 12, of the state constitution, in that they are retroactive in their operation, and impose upon the people of the district "a new liability in respect to transactions and considerations already past"; that they violate art. 8, sec. 3, of the state constitution in that they impose upon the district, or incur an indebtedness of the district,

exceeding the income and revenue of the year in which imposed, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose.

They further contend that chap. 105, Local and Special Laws of 1927, is violative of art. 3, sec. 19, of the state constitution, in that it is a local and special law "authorizing the creation, extension or impairing of liens . . . . , creating a corporation . . . . , for the assessment and collection of taxes . . . . , giving effect to invalid deeds, leases or other instruments . . . . , legalizing as against the state the unauthorized or invalid act of an officer."

It is contended that in *Shoshone Highway Dist. v. Anderson,* 22 Ida. 109, 125 Pac. 219, "the question before the Idaho Supreme Court resolved itself to this: that if a highway district was a taxing unit or general political subdivision of government, then the law created double taxation in violation of the constitution; but if it was merely a special assessment area, which, as we know, generally does and did in this instance proceed upon the theory of benefits to the property within the district, then the constitution was not infringed"; and that therein the court determined "that a highway district is a special assessment and local improvement area," "created for a special purpose, to wit: the assessment of property within the district for the sole and only purpose of improving the highways within the district"; that "the question of whether a highway district in Idaho is a special assessment area is not open to discussion"; and that "this court, under all applicable rules of construction, is bound by that decision"; and that while the burdens are imposed by levy of so-called taxes upon an *ad valorem* basis, in principle these levies are special assessments for benefits, and that the act must be construed and justified exclusively under rules of law applicable thereto.

Appellants cite at length from the opinion, and place great stress upon later decisions in *Oregon Short Line R. Co. v. Kimama Highway Dist.,* 287 Fed. 734 (739, 740), S. C., 298 Fed. 431, *Yale Highway Dist. v. Oregon Short Line R.*

*Co.*, 8 Fed. (2d) 676, 48 A. L. R. 494, *Oregon Short Line
R. Co. v. Clark County Highway Dist.*, 17 Fed. (2d) 125,
and *Strickfaden v. Greencreek Highway Dist.*, 42 Ida. 738
(748), 49 A. L. R. 1057, 248 Pac. 456, as supporting their
interpretation and conclusions, and reach the final conclusion
and contention that a highway district is not a taxing dis-
trict or a political subdivision of government, and is only
a special assessment area with power to levy assessments
according to benefits, and that the act and district are such
as were under consideration in *Browning v. Hooper,* 269
U. S. 396, 46 Sup. Ct. 141, 70 L. ed. 330, and that the
holdings in the federal cases, and especially the last above
and the Clark County Highway District case, are fatal to
the validity of chap. 66, C. S., or the existence of the dis-
trict at all.

[1] Each case must be construed with reference to the
circumstances of that case, and the questions actually under
consideration, and limited to those points of law raised by
the record, considered by the court, and necessary to the
determination of the case. (Black's Law of Judicial Pre-
cedents, sec. 11; *Bashore v. Adolf,* 41 Ida. 84, 41 A. L. R.
932, 238 Pac. 534.)

In *Shoshone Highway Dist. v. Anderson, supra,* so far as
germane to the questions herein, the contention was made
that the title of the act contained more than one subject,
in violation of sec. 16, art. 3, of the constitution. Arguing
that subjects wholly unrelated were included, the appellant
contended that the provision for a district levying a tax
upon property in an included municipality, was in viola-
tion of sec. 6, art. 7, of the constitution, and permitted
duplicate taxation.

Neither briefs of counsel nor the opinion refer to sec. 5
of art. 7 of the constitution, which prohibits duplicate taxa-
tion, but the court treated the contention as not only
raising the objection as to inclusion of more than one and
unrelated subjects in the title, but as going to the con-
stitutionality of the taxing features, and as an argument
"that the act . . . . violates the provisions of sec. 6, art. 7
of the constitution, in that said act provides for double taxa-

tion of property in municipal corporations situated within highway districts. . . . . That inasmuch as cities, towns and villages of the state are authorized to levy taxes for highway and street purposes, the legislature has no power to authorize other municipalities, such as highway districts, which include cities, towns and villages, to levy a tax upon the property within cities and towns and villages for use upon highways and roads outside of the limits of such cities, towns and villages.''

Answering these contentions, the court said:

''The act now under consideration also authorizes a highway district to levy a tax for road and bridge purposes upon all the property within the district. . . . .

''Whether this constitutes double taxation or is a taxation which makes a double burden upon the property owners within cities, towns and villages, depends in a large measure upon the question whether such taxation is used for the same purpose in both instances. A highway district as intended by this act is not a political municipality. It is not created for the purpose of government. It is an entirely different kind of municipality from that of a city, town or village. Its powers are specially limited to the construction of highways upon lines of benefits to the inhabitants and the property within the territory embraced within the district. It is made a taxing district and consists of such territory as may be determined by the county commissioners in creating the same. It is contemplated by the provisions of the statute that the property and the people of the entire district are interested in the construction and improvement of the public highways of the district, and it is created for a special purpose, to wit, the assessment of property within the district for the sole and only purpose of improving the highways within the district. . . . .

''The construction of highways leading to a city, town or village from a country district is not only a benefit to the country outside of such city, town or village, but is a like benefit to such city, town or village, and such taxation being one based upon benefits, is not prohibited by any constitutional provision.''

Appellants contend that expressions in the opinion as to the limited purposes of a district, and negativing its identity with other named corporate entities, together with repetition of these and further characterizations in *Strickfaden v. Greencreek Highway Dist., supra,* with interpretations thereof in other cases, can lead but to the conclusion that the decision was tantamount to a holding that a district is not "a taxing unit or general political subdivision of government," but only a special assessment area, and that the act, not having provided for notice and a hearing as to the inclusion of their property in the district, or the levy of such special assessments, or the benefits, if any, to the district or to their property, is wholly void.

Among excerpts from later decisions cited as interpretations supporting them, are:

"In form, it is true, the burden is not imposed by 'local assessment'; but essentially that is what it is." (*Oregon Short Line R. Co. v. Kimama Highway Dist.,* 287 Fed. 734 (739).)

"A highway district in Idaho is not a political municipality created for governmental purposes, but its powers are specially limited to the construction of highways for the benefit of the inhabitants and property therein, and its power to tax is not unlimited." (*Kimama Highway District v. Oregon Short Line R. Co.,* 298 Fed. 431 (syllabus).)

"Highway districts as intended by the Highway District Law, cannot be said to correspond identically with either public corporations, or counties, or municipal corporations, or cities, towns and villages. They are *quasi*-municipal corporations, not political municipalities, not created for purposes of government, but for a special purpose, namely, that of improving the highways within the district." (*Strickfaden v. Greencreek Highway District supra.*)

"Here, on the initiation of individuals signing the petition, a special district was carved out to furnish credit and to pay for specified improvements on designated roads wholly within the territory selected. The purpose was special, and the district will cease to exist as a body corporate upon

the payment of the bond debt. It is clear that the burdens here sought to be imposed on appellants' lands are special assessments for local improvements.'' (*Browning v. Hooper, supra,* referring to the statutes of Texas.)

It must be noted that the opinion in *Shoshone Highway Dist. v. Anderson, supra,* also said:

"The subject of taxation is a matter within the province of the legislature of the state, unless there is some specific limitation found in the constitution. (27 Cyc., pp. 607–613; 1 Elliott, Roads and Streets, sec. 475.) The legislature in this instance has seen fit to provide for the creation of highway districts for the purpose only of improving the highways of a section created into a district. It has determined this matter and what property is subject to taxation therein, and the method of apportioning the fund raised, and it was acting clearly within its constitutional right, and there is no attempt on the part of the legislature to impose taxes for the purpose of any county, city, town or other municipal corporation, but a clear exercise of legislative authority granting to a community, subject to certain restrictions, the right to organize themselves into a municipal corporation with power of local taxation, and the issuing of bonds for public improvements, and the section of the constitution above referred to in no way prohibits such legislative action. . . . .

" 'Highway improvements may be made by a tax on all the property, real and personal, in the taxing district, or by local assessment against the real estate specially benefited.' "

[2] The conclusion reached by a court is the decision of the court. What is said is the opinion and reason of the court for the decision. But in construing what has been said, if it can reasonably be construed to mean that which supports the decision and conclusion, it cannot reasonably be construed to have meant something else which must have resulted, if meant, in a contrary result or refuting the conclusion. (Black's Law of Judicial Precedents, sec. 11, p. 53.)

"It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." (*Cohens v. Virginia,* 6 Wheat. 264 (399), 5 L. ed. 257 (290).

" . . . . The generality of the language used in an opinion is always to be restricted to the case before the court, and it is only authority to that extent. (*Louisville & N. R. Co. v. Davidson County Court,* 1 Sneed (Tenn.), 637 (695), 62 Am. Dec. 424.)

In *Shoshone Highway Dist. v. Anderson, supra,* the right of the legislature to delegate to a highway district the power to levy taxes was declared, as well as that the district was a taxing district. Hence, those negative expressions denying its identity with certain named corporate entities, such as a political municipality, city, county, etc., were not used in the sense of denying either the power of the legislature . to delegate to it, or of the district to exercise, the taxing power, if to deny its character as above would have had such effect. To give the language literal interpretation would be to deny the power of taxation at all, either by *ad valorem* tax or special assessment for they both depend upon the power of taxation (1 Cooley on Taxation, 4th ed.), secs. 1, 31), and the power of taxation cannot be delegated to a private corporation or for a private purpose (1 Cooley on Taxation, 4th ed., secs. 87, 174), and must be for some purpose of government. To deny in its broadest sense that a highway district is created for the purpose of government, or for governmental purposes, or a governmental purpose, would deny the right to delegate to it power of taxation by either *ad valorem* tax or special assessment. Then in the use of such terms of denial and characterization, there must have been some less extensive meaning.

What was meant in restating these characterizations in *Strickfaden v. Greencreek Highway Dist., supra,* was that a district was not such public governmental agency as, under the facts therein, would exempt it from liability within the principles of decisions recognizing such exemption of governmental agencies. Limited to that meaning,

that decision has no bearing on the power of district to levy a tax, but by strongest reasoning implies such power in order to pay the very judgment affirmed therein. No reason can be given for apportioning the assessment of the amount on other than an *ad valorem* tax basis. Surely it could not be spread and collected upon the basis of a special assessment dependent upon benefits. The opinion lends no support to an argument that the district is a special assessment district of the kind contended for by appellants.

This power of delegation and delegated power to levy a tax were likewise not in issue in the Kimama or Yale District cases, and reiteration of these and similar expressions therein must be likewise limited in their meaning. "Public corporations, or counties or municipal corporations, or cities, towns or villages," or "political municipalities," or "political subdivisions of government," or "taxing districts," do not depend upon their name for powers of taxation or other governmental powers or functions. To apply such name to a district, of itself grants or denies no power to the legislature to delegate the power of government or of taxation thereto, nor to it power to exercise governmental or taxation functions. Such power of delegation must be found in, or not prohibited by, the constitution, and the delegation of power must be found in statutory law, or perhaps implied from other powers which are delegated. A creature of the legislature is that which, in view of its powers to create and its acts in creating it, finally results.

Probably as good a statement as possible of the sense in which each and all of the terms were used is contained in the expression of Judge Dietrich in *Oregon Short Line R. Co. v. Kimama Highway Dist.*, 287 Fed. 734, after quoting the expressions from the Shoshone Highway case, in further distinguishing a highway district from a school district, as follows:

"Nor does it exercise functions (closely analogous to those of a school district) by which the general well-being of the body politic as a whole is protected and safeguarded."

What was meant in each instance was that a district, in the broader sense, had not general political powers of government, was not created, as other of the named corporate entities, to govern in the broad sense the general affairs of those of the community as to matters other than roads, but was created for a special purpose in conformity with the policy and duties expressed in the opening words of the act.   (C. S., sec. 1490.)

This is in harmony with the further declarations that the district is a *quasi*-municipal corporation, and of the statute that it shall be "a body politic and corporate."   (C. S., sec. 1505.)

The expression made much of by counsel, "and such taxation being one based upon benefits, is not prohibited by any constitutional provision," was used as to, and limited in its sense to, the matter before the court, to the effect that, as an included municipality is benefited by the construction or maintenance of roads in the including highway district and outside of such included municipality, such a tax levied by the district upon property in the included municipality is, because raised for a district purpose which is different from taxes levied within the city by the city, not duplicate taxation, and is not a levy for the included municipality, and does not violate sec. 6 of art. 7, by which such included municipality has power to levy its own taxes for its own purposes, and that the title did not include more than one subject.   This expression was used to delimit the objects and purposes of the district and included municipality, and was not a declaration that the burden or tax was a special assessment depending upon benefits, or to be determined or spread as such.

It will thus be seen that the decision that the tax provisions of chap. 66 did not provide duplicate taxation was not based upon the premise assumed by appellant, that the district was not "a taxing unit or general political subdivision of government," or was a "special assessment area."

The mere inclusion of lands in a district cannot deprive any owner of due process of law, or the equal protection

of the laws (*Burt v. Farmers' Co-operative Irr. Co.*, 30 Ida. 752, 168 Pac. 1078; *Booth v. Groves*, 43 Ida. 703, 255 Pac. 638), or entitle him to notice or hearing, unless, by reason of the inclusion, burdens are attached thereto as a legal consequence thereof. Hence, for purposes and as to provisions inflicting no burden, no notice need be given of such organization.

[3, 4] After portions of a state law have been declared by federal courts to violate the federal constitution, the inquiry as to whether the remaining portions which do not violate the federal constitution are sufficient in themselves so that it cannot be said that the entire act falls ordinarily presents no federal question. If it be assumed that in *Oregon Short Line R. Co. v. Clark County Highway Dist.*, 17 Fed. (2d) 125, that was necessarily decided, or decided at all, such decision is not binding upon this court. In fact, unless this court can say that it clearly appears that the act, with such or any portions eliminated, would not have been enacted, our duty is to sustain the remaining portions.

While, in the Oregon Short Line case, the court said, "The underlying, and indeed the only, question submitted is of the validity of the act," the action was one for injunction against the issuance of bonds, and while in effect declaring the taxing powers of the district invalid, we do not construe the opinion or decision as intended to invalidate other portions of the act not violative of the federal constitution.

Hence, although we have reviewed the matter at length, yet in view of the provisions of the act for organization of districts, and of this and other acts granting them powers, rights and privileges too numerous to need mention herein, and as to which no question is raised herein, or could perhaps be raised at all; in view of the early declaration of this court of the constitutionality of the act, and its recognition of such constitutionality in the many subsequent cases involving districts, or the constitutionality or legality of their action, the bond issues passed upon by decisions of this court, the constantly reiterated recognition of districts and of the high-

way act by almost every succeeding legislature, and of the recent recognition by the validating acts, and as from a view of all the provisions of C. S., chap. 66, it cannot be said that the legislature would not have enacted those valid portions thereof, we conclude that for purposes of C. S., chap. 66, not contested herein, the legislature had a right to provide, and did provide, that the highway district be created, and when so created it became and is a legal entity, a body politic and corporate, with at least some of the powers sought to be conferred by C. S., chap. 66, even though to be considered as of limited powers, or for limited purposes; and the constitutionality of the act as a whole and the organization of the district here not an open question, even though the question of a burden being inflicted by, and incidental to, its organization, and thus the question of notice and hearing to constitute due process or equal protection of law, as to such burden, may be still open, and result in the invalidity of portions of the act.

This court, in *Ditzel v. Evergreen Highway Dist.*, 32 Ida. 692, 187 Pac. 269, held that, under the provisions of sec. 6, chap. 55, Laws of 1911, which limited the bringing of an action affecting the validity of such organization to a period of one year (now six months: C. S., sec. 1495) after the making and entering of the order declaring the district organized, an action could not be thereafter commenced or maintained. We would start, then, with a valid, existing corporate entity, created by C. S., chap. 66, to inquire wherein, if at all, the provisions thereof have deprived or will deprive the plaintiffs of property without due process of law or of the equal protection of the laws, the only point on which a federal question is involved, under the fourteenth amendment to the federal constitution. Unless there is something of controlling effect to the contrary in the contentions of appellants, or unless later decisions of the federal district court or circuit court of appeals sufficiently persuasive, or of the supreme court of the United States persuasive or controlling, compel a different conclusion, that decision should preclude this action.

[5] In view, however, of the fact that the attack in the Shoshone Highway District case may be said not to have included and been made upon the peculiar ground sought to be established herein and considered in the Clark County Highway District case, and especially in view of the contention so urgently made that the so-called Archer County case (*Browning v. Hooper*, 269 U. S. 396, 46 Sup. Ct. 141, 70 L. ed. 330), must be considered as fatal to the act and the organization and powers of the district, and at least as to the power of issuing bonds so held to be in the Clark County case, we have re-examined the act with a special view to the necessities and its provisions as to notice and opportunity of a property holder to be heard at the various stages, as to the various steps in the procedure of organization of a district, and the exercise of its powers thereafter.

The first provision of C. S., chap. 66, declares the policy of the state for the improvement of its highways. Various provisions are incorporated in the act to give effect to this policy, as to which no complaint has been or could be made upon constitutional grounds.

C. S., sec. 1490, declares this policy as follows:

"The improvement of highways is hereby declared to be the established and permanent policy of the state of Idaho; and the duty is hereby imposed upon the highway boards provided for by this chapter, of improving and maintaining the public highways within their districts and of securing as rapidly as the public revenues will permit, and of maintaining permanent good roads of hard surface and properly graded and available for convenient travel thereon throughout the year."

For the organization, a petition is filed with the clerk of the board of county commissioners (C. S., sec. 1492), who publishes a notice of election for three successive weeks (C. S., sec. 1493). While the statute imposes this duty on the clerk (*Huggins v. Link*, 28 Ida. 185, 152 Pac. 1052), yet the county commissioners establish the election precincts, appoint judges, and in general conduct the election and

canvass and declare the result (C. S., sec. 1494), and from such orders an appeal may be taken (C. S., sec. 3509).

C. S., sec. 1495, provides that if the result is in favor of the creation of the district, the county commissioners enter an order declaring the district duly organized as a highway district, and that—

"After the election the validity of the proceedings hereunder shall not be affected by any defect in the petition or in the number or qualifications of the signers thereof. . . . . "

C. S., sec. 3509, provides for an appeal to the district court from any act, order or proceeding of the board of county commissioners, by any person aggrieved thereby, or by a taxpayer who deems such act, order or proceeding illegal or prejudicial to the public interests. Under C. S., sec. 3434, such person receives published monthly notice of the acts and proceedings of the board of county commissioners, and may appeal under C. S., sec. 3509, within twenty days thereof. These sections, with the notice of the election, plainly give due notice and a right of appeal from the board of county commissioners before the election to contest as to any "defect in the petition or in the number or qualifications of the signers thereof," and after the election an appeal from any order declaring the district duly organized. On such appeal, the matter is heard anew, and the act, order or proceeding so appealed from may be affirmed, reversed or modified. An appeal from the district court to the supreme court may be had. Thus, plainly whether or not the district court could modify the order as to its boundaries, or the property included therein, which is unnecessary herein to decide, it has the undoubted right to reverse such an order.

We do not mean to declare that the provisions for appeal to the district court are in themselves exclusive, for by reference in C. S., sec. 1495, court procedure is impliedly recognized as permissible within six months after the entering of such order.

Although the district therein considered became a special assessment district, *Houck v. Little River Drainage Dist.*,

239 U. S. 254, 36 Sup. Ct. 58, 60 L. ed. 266, sets forth principles applicable to taxation by either *ad valorem* or special assessment levies, pertinent herein. It was there said:

"The district is, indeed, a conspicuous illustration of the class of enterprises which have been authorized in order to secure the recognized public advantages which will accrue . . . . It was constituted a political subdivision of the state for the purpose of performing prescribed functions of government. . . . . These drainage districts, as the supreme court of the state has said, exercise the granted powers within their territorial jurisdiction 'as fully, and by the same authority, as the municipal corporations of the state exercise the powers vested by their charters.' (*Houck v. Little River Drainage Dist.*, 248 Mo. 383 [154 S. W. 739].) . . . .

"The propriety of a delegation of this sort was a question for the state alone. And with respect to districts thus formed, whether by the legislature directly or in an appropriate proceeding under its authority, the legislature may itself fix the basis of taxation or assessment; that is, it may define the apportionment of the burden, and its action cannot be assailed under the 14th Amendment unless it is palpably arbitrary and a plain abuse. These principles have been established by repeated decisions. . . . .

"The legislature, in this instance, fixed the object and character of the tax, and prescribed the maximum rate. . . . . They were thus apprised of whatever legal consequences attached to the formation of the district with their lands in it. The present question, therefore, cannot properly be regarded as one of notice. The imposed burden, if it be in its nature a lawful one, is an incident to the organization which they had abundant opportunity to contest. It is apparent that when the district was duly organized it had the same footing as if it had been created by the legislature directly; and if the legislature could have established this district by direct act, and then constitutionally imposed upon the lands within the district the ratable tax in ques-

tion to pay the expenses of organization and for preliminary work, it cannot be doubted that the legislature had power to impose the same tax upon the district as organized under the judgment of the court.''

Villages are incorporated under C. S., sec. 3900, and this is accomplished by order of the county commissioners, from which an appeal may be had (*Gardner v. Blaine County*, 15 Ida. 698, 99 Pac. 826; *Village of Ilo v. Ramey*, 18 Ida. 642, 112 Pac. 126), and such village becomes a body corporate and politic (C. S., sec. 3929) with powers of taxation (C. S., secs. 3940, 3941) and issuance of bonds (C. S., sec. 4109). Likely no one would have the temerity, at this late date, to question the constitutionality of the incorporation of a village, when the provisions of the law have been duly complied with, or the power to tax within the constitutional and statutory limits, so granted and exercised for village purposes; and even so, public policy and long recognition of the statute would likely preclude such an inquiry, at least at the instance of other than the state. (*Austrian v. Guy*, 21 Fed. 500.)

It is difficult to draw any distinctions which would uphold such an organization of villages and their taxing powers, and deny due incorporation as a taxing unit to highway districts under provisions so similar as those here provided. That a district is limited to the exercise of but one power does not affect the question. (*City of Augusta v. Augusta Water Dist.*, 101 Me. 148, 63 Atl. 663; 1 Cooley on Taxation, 4th ed., sec. 321; 8 McQuillin on Municipal Corporations, sec. 2052.)

The power to levy the road and bridge taxes in question and to issue bonds and levy a tax for their payment, was a ''legal consequence attached to the formation'' of the district, ''an incident to the organization which they had abundant opportunity to contest.'' (*Houck v. Little River Drainage Dist., supra.*)

Owners of property in the district had due and timely notice of the election for the creation of the district, and of orders as to canvassing and declaring the result (C. S., sec.

1494), and of the order declaring it organized, from which, as acts of the county commissioners, they could have appealed and had a hearing.

While a highway district is not in the first instance "organized under the judgment of the court," the act contains provision for notice and hearing upon an appeal if the property holder wishes it, leading to a "judgment of the court," in which the orders of the county commissioners may be reversed resulting in denial of the organization. Thus, due process of law was afforded to anyone whose property was proposed to be included in the district. (3 Cooley on Taxation, 4th ed., secs. 1120, 1121.)

It can be safely said that no case treating of the nature of a highway district prior to the Clark County Highway District case has, in use or repetition of language characterizing it, denied that it is such a "body politic and corporate" or corporate entity, to which the power of taxation by *ad valorem* tax may be delegated. In fact, that case does not deny the power to delegate, for it proceeds upon the theory that the act is void in not providing notice and hearing as to its creation and organization, or, in other words, that the bonds and tax to pay them are so in the nature of a special assessment as to require notice and opportunity for a hearing before levied. That case does not give any weight to the method of creation upon notice and hearing as authorizing any levies incidental to the creation of the district, as in *Houck v. Little River Drainage Dist.*

Two views may be taken of the question as to the necessity of notice and hearing as to the bond issue: First, the district, having been organized on notice and an opportunity for hearing, became a taxing district and subdivision (Const., art. 8, sec. 3), with power to vote upon a bond indebtedness, and thus inclusive of the power to issue bonds. If so, no notice and hearing were necessary as to spreading such burdens. Granted the power to issue bonds for a penny for a purpose of the district, it is a subject of the taxing power. While inquiry is open as to such burden being

arbitrary or confiscatory, the fact that it may be so does not necessarily deny the constitutionality of the method or the organization of the district, as to which due notice and an opportunity to be heard have been afforded. If the power to issue bonds is incidental to the taxing power of the district, a tax is not to be defeated upon the ground that a taxpayer does not receive special benefits. Second, that assumed in *Oregon Short Line R. Co. v. Kimama Highway Dist., supra,* as to both the ordinary taxes and the bond issue, that "in form, it is true, the burden is not imposed by 'local assessment'; but essentially that is what it is," and that notice and opportunity to be heard must be afforded before the burden is imposed.

The taxes herein are levied upon both real and personal property, and are thus not special assessments, which may be levied only upon real property. (2 Cooley on Taxation, 4th ed., sec. 570; *Williams v. Corcoran,* 46 Cal. 553.)

C. S., sec. 1510 provides:

"The highway board shall have power to receive road petitions and lay out, alter, create and abandon public highways within their respective districts, subject to an appeal therefrom to the district court of the judicial district in which such highway district is situated, in the same manner in which appeals are taken from the board of county commissioners to the district court."

The bonds in question were issued after an election. C. S., sec. 1551, states the purposes for which bonds may be issued. C. S., sec. 1552, requires a resolution specifying the purpose and amount of the proposed bonds, and provisions to be made for payment of interest, and to constitute a sinking fund for their payment within twenty years from the time of issuance, and providing for holding an election. Notice of such election is given by publication for ten days in a newspaper published in the county. By C. S., sec. 1554, notice must be given by two weeks' publication of the intention to issue and negotiate such bonds. C. S., sec. 1555, provides for levying a tax to pay interest and create a sinking fund for the payment of the principal. The levy of this tax is incidental to the issuance of the bonds.

In view of the pronounced policy of the state for improvement, and the duty of highway boards of improving and maintaining highways, and this being their purpose (C. S., sec. 1490), and as the purpose of a highway district to issue bonds must be specified by resolution, and as such purpose refers and applies to purposes set forth in the statute, the resolutions calling an election to vote upon a bond issue (C. S., sec. 1552), and giving notice of intention to issue and negotiate bonds (C. S., sec. 1554), are acts, orders and proceedings so necessarily related to, and connected and associated with, the exercise of the powers granted in C. S., sec. 1510, as to constitute appealable orders thereunder, and give an appeal to the district court therefrom. These notices, with opportunity to appeal and be heard in the district court by any person aggrieved thereby, or as to their being illegal or prejudicial to the public interests, furnished appellants "abundant opportunity to contest" such issuance or sale of bonds upon any such grounds.

Thus, whether the district is viewed as a taxing district or special assessment area, ample notice and opportunity have been afforded to appellants to be heard before the exercise of the power and imposition of the burdens complained of.

With these conclusions, a review of *Oregon Short Line R. Co. v. Clark County Highway Dist.*, and the Archer County case, will demonstrate wherein they are not controlling of the issues here.

*Oregon Short Line R. Co. v. Clark County Highway Dist., supra,* was an action for injunction against the issuance of bonds. The court therein, after an analysis of the act and facts, relied almost wholly upon the Archer County case. In fact, after quoting a paragraph from that decision, the court said:

"As we construe this last paragraph of the opinion, it is decisive in support of plaintiff's contention . . . . "

The paragraph quoted was this:

"Where a local improvement territory is selected, and the burden is spread by the Legislature or by a municipal-

ity to which the state has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. . . . . But it is essential to due process of law that such owners be given notice and opportunity to be heard on that question, where, as here, the district was not created by the Legislature, and there has been no legislative determination that their property will be benefited by the local improvement. Appellants were denied all opportunity to be heard. No officer or tribunal was empowered by the law of the state to hear them, or to consider and determine whether the road improvements in question would benefit their lands. The act is repugnant to the due process clause of the Fourteenth Amendment.''

The court reaches the conclusion that they do not ''find warrant for withholding application of the rule of the Archer County decision.'' We do not agree with the analysis, or that the Archer County case is so similar as to be controlling herein. The court, in the latter case, in a previous paragraph said: ''The Legislature did not create the road district, levy the tax, or fix the amount to be raised. Under the act, road districts are not required to correspond with or to include any political subdivision.'' This is true here.

Further: ''There is nothing in the law to guide or to limit the action of the signers of the petition in selecting property to be assessed. Subject to the vote of a district of their own choice, the petitioners' designation is absolute. The commissioners' court has no power to modify or deny; it is bound to grant the petition.'' We cannot agree that in this the acts are similar. The district court on appeal can inquire into the property selected to be assessed, and re verse the order. It is not ''bound to grant the petition,'' but can ''deny'' it, and thus the petitioners' designation is not ''absolute,'' and the power of the court to deny is a ''limit'' upon ''the action of the signers . . . . in selecting property to be assessed,'' not found in the Texas act. .

The court further said: ''And plainly the authority granted to issue road bonds up to one-fourth the assessed

valuation and to levy taxes ratably to pay them is not a legislative determination of the rate or amount of the tax imposed on appellants' property. The amount of the bonds to be issued and the property to be taxed are the elements which determine the burden.'' This is also true here.

"These were fixed by the petition and election.'' This is not so herein; at least in its broad sense they are not unalterably fixed, for an appeal lies to the district court from an order calling an election to vote upon the issuance of bonds, or from an order giving notice of intention to sell such bonds, and thus, in its very inception, or before the bonds are sold, full inquiry may be had.

We agree that "where a local improvement territory is selected, and the burden is spread by the Legislature or by a municipality to which the state has granted full legislative powers over the subject, the owners of property, in the district have no constitutional right to be heard on the question of benefits.''

But the court further said that " . . . . It is essential to due process of law that such owners be given notice and opportunity to be heard on that question (the question of benefits), where, as here, the district was not created by the Legislature, and there has been no legislative determination that their property will be benefited by the local improvement. Appellants were denied all opportunity to be heard. No officer or tribunal was empowered by the law of the state to hear them, or to consider and determine whether the road improvements in question would benefit their lands.''

Even assuming similarity to the extent that the burden herein is in the nature of a special assessment, and such hearing and determination of benefits necessary, the last two statements are not true or applicable as to the law here. Appellants were not "denied all opportunity to be heard,'' but had notice and an opportunity to be heard with relation to the territorial limits of the district, and the inclusion of their property therein, in at least two stages of the proceedings, by the district court, a "tribunal . . . . empowered

by the law of the state to hear them,'' as to any burden "incidental to the creation of the district" and to the "inclusion of their property." (*Houck v. Little River Drainage Dist., supra.*)

As to the issuance of bonds, the appellants had "opportunity to be heard" on appeal from the orders as to the first election and from the order declaring the district organized, as to the incidental power of issuing bonds in the manner provided by the act; and even if the bond issues be considered so in the nature of a special assessment as to require it, they were, by notices and opportunity to appeal from either the resolution calling a bond election or declaring an intention to issue and sell the bonds, again afforded two opportunities to be heard by the district court, a tribunal "empowered by the law of the state to hear them," and "to consider and determine whether the road improvements in question would benefit their lands."

Nor do we have, as there, a district which "will cease to exist as a body corporate upon the payment of the bond debt," nor an impossibility "until the last bonds mature . . . . to raise money for the improvement of roads needed to serve the territory in which their lands are situated," but an existing, continuing body politic and corporate, in which other road improvements may be made out of general revenues, as well as by further bond issues.

We have thus a different act and a different situation, and we cannot agree that the Archer County case is parallel, or that the conclusion therein is controlling as to the present act.

It is no valid objection to the validity of the act, or the organization of districts or the execution of purposes which will result in fair and equitable burdens for purposes within the powers of the district, that a district may be proposed, or a purpose thereafter proposed, which will not so result, if by timely objection under due provisions for notice and hearing, the organization or the execution of such purpose may be inquired into, and if of the latter kind prevented.

It is unnecessary to say that conditions could not arise

under the provisions of this act, or that action or results may not be attempted thereunder, which would, if not subject to review, result in illegal arbitrary or confiscatory and unconstitutional levying of burdens. Such instances are apparently furnished by the decisions in the Kimama and Yale cases. It is sufficient if the act itself, or other provisions of law to be construed therewith, furnish adequate notice, opportunity for hearing, and relief to those alleging injury, by resort to the courts for hearing and review. In either of the cases, assuming the facts therein found, the plaintiff could have found relief in the provisions of the act itself, which, in co-ordination with other provisions of the law, furnished due process of law for the determination of the issues presented.

By reason of these provisions for notice and hearing, we cannot agree with the court in *Oregon Short Line R. Co. v. Clark County Highway Dist., supra,* that "the taxable status of the property . . . . is . . . . established, . . . . without an opportunity to nonconsenting property owners to be heard," or that "the relative burden of all taxes is predetermined by the few original petitioners . . . . or, at best, by a majority of those voters at the organization election," nor that "under the terms of the law as it stands, the most flagrant injustice is easily possible," or that, if injustice is possible at all, this is due to any weakness in the act or its failure to provide due process of law and equal protection of law to plaintiffs, but to their failure to give attention to those opportunities afforded by the act.

We conclude that C. S., chap. 66, is valid, and that plaintiffs are not thereby deprived of property without due process of law, or denied equal protection of law, and thus the act does not violate either art. 1, sec. 13, of the state constitution, or the fourteenth amendment to the federal constitution. Having, after due notice and an opportunity to be heard afforded by the act, waived their right to contest the organization of the district, or the legality of the issuance of the bonds in question, they cannot now maintain this action.

This renders it unnecessary to pass upon the effect of the so-called validating acts.

The judgment is affirmed.    Costs to respondents.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ., concur.

Budge, J., concurs in the conclusion reached.

Petition for rehearing denied.